UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRCIT OF OHIO (CINCINNATI)

| | |
|---|---|
| UNITED STATES OF AMERICA | ) |
| Plaintiff, | ) ) |
| v. | ) MOTION FOR RELIEF PURSUANT TO ) 18 U.S.C. § 3553 ) |
| | ) DOCKET NO.   1:13CR00024-007 ) |
| KELLEY HARRISON | ) ) |
| Defendant | ) ) |

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*
**MEMORANDUM**

Comes the Defendant, KELLEY HARRISON, by counsel and submits the following Sentencing Memorandum in support of his motion to aid the Court in its determination of a reasonable sentence in the above styled manner.

In *United States v. Booker*, 543 U.S. 220 (2005), the Supreme Court established that a district court is to impose a sentence upon the defendant that is "reasonable." The sentence must be informed by the advisory guidelines range, but ultimately driven by the sentencing factors set forth by Congress in 18 U.S.C. § 3553 (a). *Id.* In this case, the range for sentence per the guidelines in the opinion of the U.S. Probation Office is 41-51 months. However, the U.S. Probation Office has recommended a sentence of 15 months for the Defendant. The Supreme Court clarified in *Booker* that such sentencing guidelines are only advisory in nature. *Id.* As such, they may be adopted to fit the unique circumstances presented to the Court, in keeping with the sentencing directives set forth in § 3553 (a). To that end, Defendant argues below that independent of the guidelines and recommendation, application of factors set forth in 18 U.S.C. § 3553 (a) warrants a lower sentence then even 15 months since any harsher sentence would be

greater than necessary to comply with the purposes of sentencing. *See Rita v. United States*, 551 U.S. 3389, 344 (2007).

Additionally, pursuant to 18 U.S.C. § 3661, "no limitation shall be placed on the information concerning the background, character, and conduct of [the defendant] which a court of the United States may receive and consider for the purpose of imposing an appropriate sentence." This statutory language certainly overrides the (now advisory) policy statements in Part H of the sentencing guidelines, which list as "not ordinarily relevant" to sentencing, a variety of factors such as the defendant's age, educational and vocational skills, mental and emotional conditions, drug or alcohol dependence, and lack of guidance as a youth. *See § 5H1. See also United States v. Nellum,* 2005 U.S. Dist. LEXIS 1568 (N.D. Ind. Feb. 3, 2005).

A.  **PRESENTENCE INVESTIGATION REPORT AND RECOMMENDATION**

On February 4, 2015, Defendant, Kelley Harrison pled guilty to the sole count of his indictment. As a part of his plea deal, Defendant pled guilty to Conspiracy to Distribute Marijuana in an amount of 100 or more Kilograms in violation of 21 U.S.C. § 846, 841(a)(1) and 841 (b)(1)(B). The statutory maximum penalty for this Count is 20 years with a term of supervised release of at least 3 years and a maximum fine of $1,000,000. In this case, the advisory guideline based upon a criminal history category of II and a total offense level of 21 is 41-51 months with a recommendation of 15 months.

B.  **APPLICATION OF THE STATUTORY SENTENCING FACTORS CONTAINED IN 18 U.S.C. § 3553(a) TO THE FACTS OF THIS CASE**

The following factors, in addition to the factors discussed in the Presentence Investigation Report, must be considered when determining what type and length of sentence is sufficient but not greater than necessary to satisfy the purpose of sentencing.

1. **Nature and Circumstances of the Offense and the History and Characteristics of the Offender**

In this case, Kelley Harrison timely admitted to being guilty. He has taken responsibility for his crime and assisted the Government in saving time and money in pursuing these charges against him. *See* 18 USCS Appx § 5K1.1.

Furthermore, Defendant experienced substantial coercion and duress from co-defendants to conspire in the charges he pled guilty to. The United States Sentencing Commission has recognized that coercion and duress warrant a downward departure. *See* 18 USCS Appx § 5K2.12. Specifically, if the coercion or duress does not amount to a complete defense, the Court may still depart downward. *Id. See Brinson v. United States*, 2011 U.S. Dist. LEXIS 113354 (E.D. Tenn. Sept. 29, 2011) ("Therefore, although the evidence may be insufficient to amount to a complete defense, if the evidence sufficiently demonstrates a serious degree of coercion or duress, a defendant may receive a downward departure under § 5K2.12."). Additionally, other Circuits have found that "'The court is not confined to the classical definition of duress' when considering a departure under § 5K2.12." *United States v. Cotto*, 347 F.3d 441, 445 (2d Cir. Conn. 2003) (citing *United States v. Smith*, 987 F.2d 888, 891 (2d Cir. 1993)). Instead, § 5K2.12 provides a broader standard of coercion as a sentencing factor than coercion as required to prove a complete defense. *Id.* at 445-46. Although duress requires a well-rounded fear of imminent bodily harm with no opportunity to escape, § 5K2.12 requires only a more general "threat of physical injury" or "substantial damage to property." *Id.* at 446. *See* § 5K2.12. Thus, the type and kind of evidence necessary to support downward departure premised on duress is somewhat less than that necessary to support a defense of duress at trial. *Id.* (citing *United States v. Amparo*, 961 F.2d 288, 292 (1st Cir. 1992)). When determining a departure for coercion or duress, some courts have sought to objectively determine whether a reasonable person in defendant's position

would perceive a threat. *United States v. Sachdev*, 279 F. 3d 25, 29 (1st Cir. 2002). Defendant respectfully asks this Court to consider the aforementioned interpretations of § 5K2.12 and submits that these interpretations support § 5K2.12.

A departure based on coercion or duress is usually only sufficient to warrant a departure when it involves a (1) threat of physical injury, (2) substantial damage to property or (3) similar injury resulting from the unlawful action of third party or from a natural emergency. 18 USCS Appx § 5K2.12. The extent of the decrease ordinarily depends on (1) the reasonableness of the defendant's actions, (2) proportionality if the defendant's actions to the seriousness of the coercion/duress, and (3) the extent to which the conduct would have been less harmful under the circumstances as the defendant believed them to be. *Id.*

In this case, downward departure is warranted because Defendant was faced with both threats of physical injury and substantial damage to property. On or about September 1, 2011, Co-Defendant Adam Cesares sent 3-4 text messages to Defendant which threatened that if Defendant did not answer the phone, Cesares would "have Defendant's f-ing head cut off." On or about November 1, 2011, when Defendant did not want to take his product to sell, Cesares told Defendant that he was going to rip the walls out of Defendant's home. Around November 1, 2011, Cesares threatened he would have "people come to [Defendant's] home from the Toledo/Akron area and would be there around 9:30PM," (implying that Cesares would send people to Defendant's home to kill or inflict serious bodily injury upon Defendant). Around the same time, Cesares was at Defendant's home and sitting at the kitchen table when Defendant told Cesares he was done and "out" and indicated by waving his hands. Cesares responded by standing and violently screaming for his young cousin to "Get the guns!" Luckily, Frederick

Jordan intervened and calmed Cesares down and probably saved Defendant from being shot that night.

All of these threats took place at or near the onset of the conspiracy and Mr. Harrison was under extreme duress as a result from the threats against his life and against his property. It was clear to defendant that any attempt to stop participating in the conspiracy, including talking to the police, would be met with extreme violence, destruction and even death. By his threats and actions, Cesares indicated to defendant that not only was Cesares capable of this violent destructive behavior, but he had connections with others who were willing to do the same for Cesares. When defendant attempted to get out of the conspiracy, he asked Cesares if Cesares had ever murdered someone. Cesares told him that he had not, but that he had seen it done. Defendant then asked if Cesares was a member of the drug cartel that Cesares mentioned. Cesares said "no but I worked for them and I could bring six cartel guys to Maysville [Kentucky] and light the sky up with 50 caliber weapons."

Defendant's continued participation in the conspiracy as a result of these threats was reasonable, proportional, and less harmful than the threats. *See* 18 USCS Appx § 5K2.12. Considering the serious and legitimate threats of physical harm, destruction of property, and death, one could objectively determine that a reasonable person in Defendant's position would have also perceived a threat. Cesares threatened to cut Defendant's head off for merely failing to answer his phone to discuss his conspiracy, and Cesares threatened even worse at the hands of cartel members if Defendant stopped participating all together. Continued participation was therefore Defendant's only reasonable option given the nature of the threats he faced.

Defendant's actions were also proportional to the threats he received. As a result of these threats, Defendant felt he was to submit to any and all of Cesares' requests in order to avoid Cesares making good on his threats. Defendant feared that any and all action taken to remove himself from the conspiracy would result in grave danger to himself and his property. Any actions the Defendant took in this conspiracy was due to his fear of retaliation if he did not cooperate.

Defendant's actions were also less harmful than the circumstances threatened. Defendant makes no attempt to minimize the gravity of the crimes to which he has pled guilty. Drug distribution is a serious matter. However, in Defendant's eyes, continuing in distribution was much less harmful then facing physical harm or destruction of property from drug cartel members.

Defendant admits that participating in the conspiracy was a bad idea in the first place. However, he first entered into it to make good on a debt owed to Cesares by his friend and employee, Donald Lipp. Defendant quickly realized his mistake in trying to help his friend and tried to exit the conspiracy, but was coerced to continue. Defendant admits that the circumstances don't warrant a complete defense. However, he submits that he did in fact face threats on his physical person and property and his actions as a result were reasonable, proportional, and less harmful than what his actions would have been had he not submitted to the coercion and duress.

2. **The Need for the Sentence Imposed to Promote Certain Statutory Objectives**

In this case, the guideline range is 41-51 months with a recommendation of 15 months. However, as the Court knows, the guidelines are only advisory. It appears that some type of

departure would be warranted so that the sentence would be sufficient but not greater than necessary as required by statute. The Defendant realizes the seriousness of the offense in which he pled guilty. However, the defendant respectfully requests a variance below the advisory minimum of 41-51 months, and below the 15 month recommendation. A variance below the recommendation would not depreciate the seriousness of the offense. The Defendant has accepted responsibility for his crimes and understands that he will receive a punishment that the Court determines is just. However, the Defendant respectfully asks the Court to consider that a sentence less than 15 months is just in his case and submits that mercy and compassion are part of justice.

In this case, Defendant reasonably feared explicit threats on his property and life, and, as a result, Defendant continued participation in the conspiracy in order to prevent these threats from coming to fruition. Since being charged, Defendant has demonstrated that he can and will be a responsible citizen. He has been gainfully employed and remained crime free since his arrest. Defendant was deeply disturbed by his participation in this matter and now finds solace in tending to the animals on his property, spending time with his wife and their kids, and working. Defendant has also come closer to God as a result of his participation in the conspiracy.

Additionally, as the Presentence Investigation Report notes, Defendant would like the Court to take into consideration Defendant's limited participation in the conspiracy, as he joined late, and also co-defendant's reduced sentences.

## CONCLUSION

Wherefore, considering the aforementioned factors, a lesser sentence than 15 months would provide sufficient deterrence and rehabilitation, and would still promote the statutory objectives set forth.

Respectfully Submitted,

ANGGELIS & GORDON, PLLC
231 Lexington Avenue
Lexington, KY 40508
(859) 255-7761

By:/s/ Derek G. Gordon
HON. DEREK G. GORDON